UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JAMES L. RADTKE, JR.,                )
                                         )
       Plaintiff,                )
                                         )
       vs.                      )          Case No. 4:13CV00213 ERW
                                         )
REBECCA WINZEN, et al.,         )
                                       )
       Defendants.          )

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Arturo Calvo Taca, Jr.. M.D.'s ("Taca") "Motion to Dismiss Counts III, IV and VII of Plaintiff's Amended Complaint"[ECF No. 65], and Defendants Mercy Hospitals East Communities' ("Mercy") and Rebecca Winzen's ("Winzen") "Motion to Dismiss Counts III, IV and VII of Plaintiff's Amended Complaint Against Defendants Winzen and Mercy Health" [ECF No. 68].

## I.      PROCEDURAL AND FACTUAL BACKGROUND

On January 31, 2013, Plaintiff James L. Radtke, Jr. ("Radtke") filed a Complaint against Taca, Mercy, Winzen, and other defendants, asserting claims for false arrest (Counts I and II, brought against defendants Amanda Wilhelm and St. Louis County), false imprisonment (Count III, against Winzen, Taca, and Mercy), battery (Count IV, against Taca and Mercy), and conspiracy to interfere with civil rights (Count V, against all defendants) [ECF No. 1].  Radtke filed his Amended Complaint on April 3, 2013, bringing a "(Non-medical) Negligence" claim (Count VI) against the American Psychiatric Association ("APA") and one other defendant, Allen Frances, M.D. ("Frances"); a defamation claim (Count VII, against Winzen, Taca, and Mercy); and a strict product liability claim (Count VIII, against APA), in addition reasserting to the five claims he previously alleged.   [ECF No. 12].

In his Amended Complaint, Radtke alleges that his parents, "who felt compelled by unfounded fears that Radtke might suffer from a mental illness caused by brain disease, or that he might be genetically predisposed to attempt suicide," called police to their home on February 5, 2011.  Radtke further alleges he was forcibly removed from their home on that date, under duress and despite his repeated and continuing protests, by Defendant St. Louis County Police Officer Amanda Wilhelm ("Wilhelm"), and was taken directly to a hospital emergency room operated by Mercy.  He claims he repeatedly protested he did not need or want medical or hospital services, and indicated he wished to return home.  Radtke states that, "despite a clear and obvious factual absence of any medical emergency," he was held in the emergency room "under guard," originally by Wilhelm, and subsequently by Mercy.  Radtke claims he did not present any actual, apparent, or reasonably discernible threat of harm to himself or anyone else.

Radtke further alleges that, after several hours, Winzen "contrived" to arrange his involuntary admission as a psychiatric patient in Mercy's behavioral health unit by "knowingly fraudulent devices, including attempted subornation of perjury and coercion of a false affidavit" from Radtke's mother.  He claims Winzen and Wilhelm acted without justification, under color of law, to deprive him of his liberty and to force him to become an unwilling psychiatric patient, "even going so far as to make him walk without shoes in the snow when he was transferred from the emergency room" to the behavioral health unit.  Radtke claims he was held "continuously against his will" by Mercy under the direct orders of Taca, until his release on February 7, 2011.

Radtke asserts Taca inserted false and defamatory statements into Radtke's medical records, and ordered strong psychiatric drugs to be administered to him without his informed consent.  He says Winzen, Wilhelm, Taca, and Mercy relied on the APA's characterizations of "mental illness" or "mental disorder," and on the authority of the Diagnostic and Statistical

Manual of Mental Disorders, Fourth Edition ("DSM-IV"), created by Frances, to force Radtke

into the role of a psychiatric patient and deprive him of his rights under color of law.  Radtke

claims the APA has artfully constructed and energetically promoted a portrayal of a supposed

public health issue of "mental illness," and he says Frances knew, or should have known, APA's

portrayals, combined with the prevalent uses and nearly exclusive authority of DSM-IV in

diagnosis, were dangerous, likely to be misused, and likely to provoke widespread violations of

civil and human rights.  Radtke also claims two or more of the defendants conspired to

manufacture false legal evidence "apparently but not truly justifying [his] arrest and involuntary

'hospitalization' (false imprisonment)."  He further alleges that, between February 5 and 7, 2011,

Winzen, Taca, and Mercy created documents falsely stating he was suicidal, mentally ill,

deluded, behaving bizarrely or irrationally, and hallucinating.

On May 20, 2013, APA and Frances filed motions to dismiss.  Radtke originally opposed

the APA's and Frances' dismissal motions, but subsequently moved to dismiss the three claims

he had asserted against APA and Frances, filing a "Notice of Voluntary Dismissal of Counts V,

VI, and VIII" on July 19, 2013.  Thereafter, on July 23, 2013, the Court acknowledged filing of

Radtke's Notice of Voluntary Dismissal of all claims asserted against APA and Frances in his

Complaint, denied those defendants' two pending dismissal motions as moot, and dismissed

Counts V, VI and VIII of the Complaint without prejudice.

Taca filed his Motion to Dismiss Counts III, IV and VII of Radtke's Amended Complaint

on October 15 [ECF No. 65], and Defendants Winzen and Mercy filed their Motion to Dismiss

Counts III, IV and VII on October 18, 2013 [ECF No. 68].  In Count III of his Amended

Complaint, Radtke asserts a claim for False Imprisonment against Winzen, Taca and Mercy,

alleging they imprisoned him for three days without reasonable grounds.  In Count IV, Radtke

asserts a claim for Battery against Taca and Mercy, alleging he was willfully given unwanted and offensive bodily treatments, including psychotropic drugs; and in Count VII, Radtke brings a Defamation claim against Winzen, Taca, and Mercy, alleging they created records falsely stating Radtke was suicidal, mentally ill, deluded, behaving bizarrely or irrationally, and hallucinating.

On December 6, 2013, the Court conducted a hearing, by Radtke's request, on the Motions to Dismiss [ECF No. 74].   After hearing arguments from counsel, the Court took the matter under submission.

## II.    LEGAL STANDARD

Taca, Winzen, and Mercy (collectively referred to as "Defendants") move to dismiss Radtke's action for his failure to file a health care affidavit, as required by Missouri Revised Statutes § 538.225.  Section 538.225 requires plaintiffs to file affidavits attesting to the merits of any action brought against a health care provider.  The statute provides, in relevant part:

> 1.  In any action against a health care provider for damages for personal injury or death on account of the rendering or failure to render health care services, the plaintiff or the plaintiff's attorney shall file an affidavit with the court stating that he or she has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.

> *       *       *

> 5.  Such affidavit shall be filed no later than ninety days after the filing of the petition unless the court, for good cause shown, orders that such time be extended for a period of time not to exceed an additional ninety days.

> 6. If the plaintiff or his attorney fails to file such affidavit the court shall, upon motion of any party, dismiss the action against such moving party without prejudice.

> *       *       *

Mo. Rev. Stat. § 538.225.  Thus, when a party moves for dismissal due to a plaintiff's failure to comply with the statute's requirements, the court must dismiss the action without prejudice.  Mo. Rev. Stat. § 538.225.6.

## III.     DISCUSSION

The purpose of a motion to dismiss is to test "the sufficiency of a complaint[.]"  *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).

A claim has facial plausibility sufficient to survive a motion to dismiss "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*   The two-step inquiry for resolving such motions suggested in *Iqbal* begins with a court determination as to which of the complaint's allegations contain factual matter that can be accepted as true, and which allegations may be disregarded as conclusory statements, legal conclusions, or threadbare recitals of the action's elements.  *Id.* at 678-79.  After this initial evaluation establishes the existence of well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id*. at 679.

However, when matters outside the pleadings are presented and not excluded during a hearing on a motion to dismiss, the motion is treated as one for summary judgment, and is disposed of as provided in Federal Rule of Civil Procedure 56.  *Carter v. Stanton*, 405 U.S. 669k, 671 (1972).  Pursuant to Rule 56, summary judgment is proper only where there exists no

genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of

law.  *Id.*

Federal Rule of Civil Procedure 56(c) provides that a party asserting a fact cannot be or

is genuinely disputed must support the assertion by citing to particular parts of materials in the

record, or showing that the materials cited do not establish the absence or presence of a genuine

dispute, or that an adverse party cannot produce admissible evidence to support the fact.  Fed. R.

Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Only disputes over facts that

might affect the outcome of the suit under the governing law will properly preclude the entry of

summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary

judgment will not lie if a genuine dispute about a material fact is shown; "that is, if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  In ruling on a

motion for summary judgment, the Court may not make credibility determinations, weigh the

evidence, or draw inferences from the facts.  *Torgerson v. City of Rochester*, 643 F.3d 1031,

1042 (8th Cir. 2011).

In their motions to dismiss, Defendants state that the allegations against them for battery,

false imprisonment, and defamation all relate to care and treatment provided to Radtke while he

was a patient at Mercy Hospital.  They contend Missouri Revised Statute § 538.225 required

Radtke to file with the Court, no later than ninety (90) days after the filing of his Complaint, an

"Affidavit of Merit," attesting he had obtained the opinion of a legally qualified health care

provider that states the three defendants breached the standard of care in their care and treatment

of Radtke.  The three defendants claim the ninety-day deadline has lapsed, and Radtke has failed

to file the requisite Affidavit of Merit by a legally qualified healthcare provider.  They state that

Section 528.225 permits an extension of up to 180 days from the filing of the Complaint, and

allege that more than 180 days have lapsed since Radtke's filing of both his original and amended complaints.

Whether a plaintiff must file a health care affidavit depends on whether the parties' relationship is that of "health care provider and recipient," and on whether the plaintiff's "true claim" relates only to the provision of health care services.  *DeVitre v. Orthopedic Ctr. of St. Louis, LLC*, 349 S.W.3d 327, 331-32 (Mo. 2011).

In his "Response in Opposition to the Motions to Dismiss by Defendants Taca, Winzen and Mercy" [ECF No. 69], Radtke denies the allegations against Defendants directly relate to his "care and treatment."  He claims he received no care or treatment, but instead "got care*less mal*treatment, no more worthy of protection or relevant to society's need for affordable health care than medical experiments at Malthausen, Dachau, Chelmsford or Cincinnati" [ECF No. 69 at 2].  Radtke contends his action is not a medical malpractice case, and argues there is no need here to screen out frivolous medical malpractice claims, as [s]tandards of professional medical care are absolutely irrelevant to this complaint" [ECF No. 69 at 3].  He further argues that his claims do not even sound in general negligence, but in intentional tort.  Radtke asserts two critical questions of fact must be determined by this Court, before an Affidavit of Merit would be relevant: 1) whether the relevant relationship between the defendants and Radtke was one of health care providers and recipient; and 2) whether Radtke's "true claim" relates only to the provision of health care services within that relationship.  Radtke denies defendants provided him health care services, claiming, "It was a money-grubbing violation of fundamental rights, which just happened to be perpetrated by a psychiatrist, a hospital, and a hospital employee" [ECF No. 69 at 5].  He contends Winzen, as a mental health coordinator, eventually attempted to suborn perjury, because she "wanted to admit an insured, paying 'patient' whom [Radtke] did not intend

7

to be; so she had to fabricate evidence to force him into that role, which would be remunerative

for her employer or in some other way secure her own advantage" [ECF No. 69 at 5-6].

In their Reply, Winzen and Mercy contend the Amended Complaint discusses Radtke's

admission to the behavioral health unit for psychiatric assessment, and that the Complaint alleges

this was improperly done and he did not need psychiatric help [ECF No. 70].  They argue that

Radtke's willingness to be a patient is not the issue, and contend § 538.225 applies to all claims

against a healthcare provider for damages for personal injury or death due to the rendering, or

failure to render, healthcare services.  They further argue that Missouri law has clearly indicated

that § 538.225 applies to claims of false imprisonment, battery and defamation that are based

upon healthcare services, citing  *St. John's Regional Health Ctr. v. Windler* (*"St. John's"*), 847

S.W.2d 168 (Mo. Ct. App. 1993).

In *St. John's*, the Missouri Court of Appeals held the filing of a Section 558.225 affidavit

was mandatory in a false imprisonment claim brought against a hospital, when, at the time of the

incident, the hospital was acting in its capacity as a health care provider.  *Id*. at 169.  The plaintiff

in *St. John's* filed a counterclaim for false imprisonment against the hospital, charging that for

two days, the hospital, acting through its employees, detained her against her will, kept her

imprisoned, and restrained her of her liberty, when she was involuntarily detained for

examination under the mental health statutes to determine whether she needed to be confined.

*Id*. at 169.  The court concluded the plaintiff's "true claim" required the affidavit, because the

basis for the alleged false imprisonment was the incorrect – or totally absent – medical

determination that she needed to be confined.  *Id*. at 171.  The court also concluded that damages

for "false imprisonment" are damages for "personal injury" within the meaning of § 558.225.1.

*Id.*  at 172.

During the hearing, Radtke argued that when Winzen, a mental health coordinator, received information alleging he presented a likelihood of serious harm to himself or others, she was required by Missouri Revised Statutes § 632.300 to conduct an investigation, evaluate the allegations and the data developed by investigation, and evaluate the reliability and credibility of all sources of information.  Radtke claimed he was brought in by the police, against his will, guarded, locked in a room, and forbidden to leave despite his continued requests to do so.  He contended that whether a valid relationship between himself and providers of healthcare services existed is an issue of fact, because the providers were forcing him to be their psychiatric patient, and, lacking informed consent, the defendants had to account for the requirements of Missouri Revised Statutes Chapter 632.

Defendants argued that a Chapter 632 violation was not pleaded in Radtke's Complaint, and its statutory scheme is not applicable here.  They contended Missouri case law holds that a lack of informed consent does not exempt an action form the health care affidavit requirement.

Radtke's Complaint does not allege any violation of Chapter 632.  However, in his pleadings and during argument adduced during the hearing conducted before this Court on December 6, 2013, Radtke additionally asserts that, in the context of forced psychiatric treatment, compliance with Missouri Revised Statutes § 632.300 et seq., was required to admit him as a "patient" against his will, and he claims that whether defendants complied is "probably" a disputed fact.  He contends that, although "the immediate point is not which of all the mental health statutes, rules and regulations were followed or violated in February, 2011[,]" such a factual dispute would have to be resolved before it could be determined his claim is based in medical malpractice.

Missouri Revised Statutes Sections 632.300 through 632.475 describe the civil detention

procedures to be followed when a "mental health coordinator" receives information alleging that

an individual, as a result of a mental disorder, presents a likelihood of serious physical harm to

himself or others.  Section 632.300.1 directs such mental health coordinators to conduct an

investigation; evaluate the allegations of serious harm and the data developed by investigation;

and evaluate the reliability and credibility of all sources of information.  If the mental health

coordinator has reasonable cause to believe the individual is mentally disordered, and as a result,

presents a likelihood of serious harm to himself or others, the coordinator may file an application

with the appropriate court.  Mo. Rev. Stat. § 632.300.2.  However, if the coordinator has

reasonable cause to believe that the likelihood of such harm is imminent, unless the individual is

immediately taken into custody, she shall request a peace officer to take him into custody and

transport him to a mental health facility in accordance with § 632.305.3.  *Id.*  Section 632.305.3

provides for detention for evaluation and treatment for a period not to exceed ninety-six hours,

and requires the completion of certain applications, based on the coordinator's own personal

observations or investigations.  Mo. Rev. Stat. § 632.305.3.  Although the issue has not been

argued by either party, the Court does note Section 632.440 provides civil immunity from suit for

health care professionals, public official, and certain peace officers who investigate, detain,

transport, conditionally release, or discharge individuals pursuant to Chapter 632.[1]

Defendants argue that the civil detention procedure statutes are not applicable in this

matter, as none of the provider defendants are sued for violating Chapter 632.  They further

---

[1]While not determinative to the disposition of the dismissal motions before it, the Court
notes defendants alleged in their Answers that Radtke voluntarily agreed to his admission to
Mercy.  The Court further notes Taca asserted § 632.440 as an affirmative defense.  Winzen and
Mercy also claimed civil immunity pursuant to the statute, but their citation apparently contains a
typographical error, as it cites to "§ 532.440 R.S.Mo."

contend Missouri courts have expressly rejected Radtke's lack-of-consent, or involuntary treatment argument.  Defendants point out the *St. John's* plaintiff claimed the evidence would show she was unlawfully restrained and the hospital did not seek to comply with § 632.305's requirements.  They argue the *St. John's* decision concluded the healthcare providers were providing healthcare and the affidavit was required, and they contend the opinion rejected Radtke's present argument without seriously addressing it.

The gravamen of all Radtke's complaints against defendants are related to alleged injuries that appear to arise out of the rendering of health care services; and the basis for Radtke's claims of alleged false imprisonment, battery and defamation appear to be an incorrect medical determination that he needed to be confined.  *See DeVitre v. Orthopedic Ctr. of St. Louis, LLC*, 349 S.W.3d 327 (Mo. banc 2011) (despite plaintiff's characterization of claim as one for assault and battery, true claim against physician was for medical malpractice, as would trigger § 558.225's requirement for filing of affidavit; whether party must file health care affidavit depends on if parties' relationship is that of health care provider and recipient, and if the "true claim" relates only to the provision of health care services); *Vitale v. Sandow*, 912 S.W.2d 121 (Mo. Ct. App. 1995) (affidavit required because basis of patient's true claim for damages was that doctor's diagnosis was incorrect, regardless of patient's characterization of claim as an action for libel; damages for libel are damages for personal injury within meaning of § 538.225).  However, in his arguments and pleadings, Radtke additionally claims possible violations of Chapter 632 of Missouri Revised Statutes.

The Court finds the Complaint is sufficient to survive dismissal at this juncture.   The record before the Court, as presently developed, appears additionally to raise the legal question whether Radtke was voluntarily confined or confined in accordance with the provisions of §

632.305.  Furthermore, the Court finds Radtke has adequately shown a genuine dispute exists as to whether the relevant relationship between the defendants and Radtke was one of health care providers and recipient; and whether Radtke's "true claim" relates only to the provision of health care services within that relationship.  The Court's ruling is confined to material in the file that appropriately can be considered in the context of the present motion; it is highly probably that a different result would follow if the record was more fully developed, and appropriately-supported motions were presented.  Based upon Radtke's Complaint, and the pleadings, materials, and arguments that can be considered, given the posture of the case, the motions before the court, and the record as presently developed, the Court concludes neither dismissal nor a grant of summary judgment would be appropriate at this time.  The Court will deny the Motions to Dismiss Counts III, IV and VII of Plaintiff's Amended Complaint.

## IV.    CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Arturo Calvo Taca, Jr.. M.D.'s ("Taca") "Motion to Dismiss Counts III, IV and VII of Plaintiff's Amended Complaint"[ECF No. 65] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants Mercy Hospitals East Communities' ("Mercy") and Rebecca Winzen's ("Winzen") "Motion to Dismiss Counts III, IV and VII of Plaintiff's Amended Complaint Against Defendants Winzen and Mercy Health" [ECF No. 68] is **DENIED**.

Dated this __22nd__ day of January, 2014.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE